UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| ROGER REIFF, | : | Case No. 3:18-cv-235 |
|---|---|---|
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

## I. Introduction

Plaintiff Roger Reiff brings this case challenging the Social Security Administration's denial of his application for period of disability and Disability Insurance Benefits. He applied for benefits on June 11, 2015, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory M. Beatty concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #8, and the administrative record (Doc. #3).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Beatty's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since February 18, 2015. He was forty-six years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). He has a high school education. *See id.* § 404.1564(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #3, *PageID* #s 153-66), Plaintiff's Statement of Errors (Doc. #6), and the Commissioner's Memorandum in Opposition (Doc. #8). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Beatty to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since February 18, 2015.

Step 2: He has the severe impairments of obesity, status-post lumbar laminectomy, coronary artery disease status-post multiple angioplasties, angina, essential hypertension, depressive disorder, and anxiety.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … except he would need to change position twice per hour for two to three minutes at a time. He would need to use a four-pronged cane to ambulate. He can climb ramps and stairs occasionally and never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and never crawl. He cannot have exposure to unprotected heights, moving mechanical parts and operate a motor vehicle. He can perform simple, routine tasks but not at a production rate pace. He is limited to tolerating few changes in a routine work setting."

Step 4: He is unable to perform any of his past relevant work.

Step 5: He could perform a significant number of jobs that exist in the national economy.

4

(Doc. #3, *PageID* #s 153-166).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 166.

V.     **Discussion**

Plaintiff contends that the ALJ incorrectly weighed medical evidence and incorrectly created and relied on a residual functional capacity that produced available work under prong five of the sequential process. The Commissioner maintains that substantial evidence supports the ALJ's decision.

   A.     **Medical Opinions**

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions.  "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted).  The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and

5

consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

If a medical source is not a treating source—i.e. non-examining sources, examining source—an ALJ must consider the same factors listed above. 20 C.F.R. § 404.1527(c)(1)-(6). However, while an ALJ is required to provide "good reasons" for discounting treating physician's opinions, "'this requirement only applies to *treating* sources.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)) (emphasis in original).

Plaintiff—in a brief paragraph—asserts that the ALJ improperly evaluated medical evidence and did not follow the treating physician rule. (Doc. #6, *PageID* #1977). He gives one example: the ALJ assigned a State agency psychologist's opinion "significant weight" because "it was consistent with the record as a whole." *Id.* (citing Doc. #3, *PageID* #164).

The Commissioner correctly observed that the non-examining State agency psychologists are not treating physicians and therefore, the treating physician rule does

not apply. Accordingly, the ALJ is not required to provide "good reasons" for discounting their opinions. *See Reeves*, 618 F. App'x at 273. The record does not include any treating physician's opinions.

Nonetheless, the ALJ is required to consider and evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(b)-(c). And, in the present case, the ALJ did so in accordance with the Regulations. After briefly summarizing Dr. Lai's opinions, the ALJ assigned them "significant weight" because they were consistent with the record. (Doc. #3, *PageID* #164). While the ALJ's reason is simplistic, his decision provides adequate support for his conclusion. The ALJ discussed Plaintiff's mental health treatment and status exams, noting, for instance, that in June 2015, Plaintiff reported that his symptoms of depression are "well managed." *Id.* at 163, 573. Further, the ALJ reviewed Plaintiff's daily activities, which are also consistent with Dr. Lai's opinion. For example, Plaintiff testimony that he cares for his son, attends church, shops at large stores, and visits family is consistent with Dr. Lai's opinion that Plaintiff does not have social interaction limitations. Thus, although the ALJ only gave one reason for assigning "significant weight" to Dr. Lai's opinion, substantial evidence supports the ALJ's conclusion.

      **B.**    **Residual Functional Capacity Assessment**

Plaintiff contends that the ALJ erred in assessing Plaintiff's residual functional capacity. Specifically, Plaintiff asserts that because the ALJ found Plaintiff has a moderate limitation in his ability to concentrate, maintain pace, and persist, the ALJ should have included limitations with the public, coworkers, and supervisors. (Doc. #6, *PageID* #1978). This argument lacks merit.

Plaintiff relies on two cases—*Ealy v. Commissioner of Social Security,* 594 F.3d 504 (6th Cir. 2010) and *Gibbens v. Commissioner of Social Security*, 659 F. App'x 238 (6th Cir. 2016). In *Ealy*, the ALJ relied on a State agency psychological consultant's opinion that Ealy was able to sustain attention to complete simple repetitive tasks in two-hour segments over an eight-hour day where speed was not critical. 594 F.3d at 516. Based on this opinion and other evidence of record, the ALJ found that Plaintiff had moderate difficulties with concentration, persistence, and pace. But, in the ALJ's hypothetical to the vocational expert, the ALJ omitted the consultant's speed- and pace-based restrictions and instead, the hypothetical question stated, in relevant part, 'assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings.'" *Id*. The Court held that Ealy's limitations were not fully conveyed to the vocational expert because the hypothetical posed by the ALJ should have included the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job." *Id.* at 516-17 (citing *Edwards v. Barnhart,* 383 F.Supp.2d 920, 930-31 (E.D.Mich. 2005); *Whack v. Astrue,* No. 06–4917, 2008 WL 509210, at *8 (E.D.Pa. 2008) (unpublished)).

*Ealy* does not support Plaintiff's argument. Plaintiff does not identify any evidence in support of his conclusion that the ALJ should have added social limitations. The ALJ relied on the assessment of Jaime Lai, Psy.D., who opined that Plaintiff has no social interaction limitations and mild difficulties in maintaining social functioning. (Doc. #3, *PageID* #s 230, 234). Based on Dr. Lai's opinion and Plaintiff's testimony—that he could interact with his wife and son, shop at large stores, and attend church—the

ALJ determined that Plaintiff has a mild limitation in interacting with others. And, consistent with Dr. Lai's opinion, the ALJ did not find that Plaintiff has any social interaction limitations. Additionally, unlike the ALJ in *Ealy*, ALJ Beatty's hypothetical question to the vocational expert mirrored his residual functional capacity assessment.

In *Gibbens*, the claimant argued that the ALJ's finding that he had moderate difficulties in concentration, persistence, or pace was not reflected in the questions posed to the vocational expert. *Gibbens*, 659 F. App'x at 249. More specifically, he asserted that "the present hypothetical question conveyed only a limitation to simple, routine, or unskilled work, which "'does not always equate with the difficulty of staying on task.'" *Id.* The Sixth Circuit did not agree. It found that two of the ALJ's limitations correlate to moderate difficulties in concentration, persistence, and pace: "(1) an inability to concentrate and short attention span, and (2) limited capacity for interaction with others …." *Id.* at 249-50. The Court concluded that these limitations "directly reflect Gibbens's moderate difficulties with concentration, persistence, and pace *based on his borderline intellectual capabilities*." *Id.* (emphasis added).

*Gibbens* does not help Plaintiff. The Sixth Circuit specifically held that social interaction was correlated to moderate difficulties in concentration, persistence, or pace because of Gibbens' borderline intellectual capabilities. There is no evidence in the present case that indicates Plaintiff has borderline intellectual capabilities.

Plaintiff contends that the ALJ erred by failing to give proper weight to his panic disorder and the limitations it causes. (Doc. #6, *PageID* #1979). Specifically, Plaintiff contends that the ALJ improperly discounted the effects of panic disorder because

9

Plaintiff declined psychiatric treatment. *Id*. This was improper, according to Plaintiff, because he was "'in the process of establishing care through the Choice program.'" *Id*. (quoting Doc. #3, *PageID* #1556).

The ALJ did not discount effects of panic attacks because Plaintiff declined psychiatric treatment. The ALJ acknowledged that Plaintiff reported having panic attacks but, importantly, also recognized that Plaintiff reported that he only has them two to three times a year. (Doc. #3, *PageID* #s 164, 1563). Further, Plaintiff did not identify any evidence of limitations caused by panic disorder. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.") (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)).

Similarly, Plaintiff contends that the ALJ improperly evaluated Plaintiff's depression and anxiety. (Doc. #6, *PageID* #1979). Plaintiff accurately observed that the ALJ incorrectly found that there was no objective evidence that he continued to take medication for depression and anxiety. Indeed, records show that Plaintiff continued to take Prozac for depression through at least August 2017. *Id.* (citing Doc. #3, *PageID* #s 1101-22). Although the ALJ overlooked records showing that Plaintiff continued to take Prozac after October 2016, this error does not establish, as Plaintiff asserts, that the ALJ "improperly interpreted the medical evidence and improperly evaluated Mr. Reiff's severe mental health impairments, which created an improper RFC." *Id*.

Plaintiff does not explain how this mistake affected or undermined the ALJ's residual functional capacity assessment. The ALJ otherwise accurately discussed

10

Plaintiff's mental health history from May 2015 to October 2016. (Doc. #3, *PageID* #s 163-64). During most of that time, Plaintiff was taking medication for anxiety and depression with positive results. For instance, in May 2016, Plaintiff reported that he has taken Prozac "'for a long time' and feels this dosage is effective at managing symptoms of depression." *Id.* at 1563. As the Commissioner correctly observed, "the evidence indicating that Plaintiff was doing well while taking Prozac suggests that he continued to do well with the medication during the subsequent five-months in 2017 that Plaintiff takes issue with." (Doc. #8, *PageID* #1996) (citing Doc. #3, *PageID* #s 1552, 1563, 1571, 1627-28). Although the ALJ erred in overlooking Plaintiff's continued usage of medication, the error was harmless.

Last, Plaintiff contends that the ALJ erred in failing to clarify the vocational expert's testimony regarding the use of a four-pronged cane. (Doc. #6, *PageID* #1979). Plaintiff emphasizes that the cane was for both balance and ambulation and, "The distinction of use between balance and ambulation, and the potential effects each use has on the work force, was not properly clarified during the vocational expert [sic] testimony." *Id.* at 1979-80.

In his question to the vocational expert, the ALJ indicated that the hypothetical individual "would need a four-pronged cane *to ambulate*." (Doc. #3, *PageID* #193) (emphasis added). Further, the individual could "occasional[ly] balance." *Id.* The ALJ had no reason to ask for clarification from the vocational expert because the ALJ's hypothetical was clear that the individual needed a four-pronged cane *to ambulate*.

11

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed; and

2. The case is terminated on the Court's docket.

Date: February 21, 2020

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge